IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MICHAEL GRUNERT, MORI JONES, PAUL JOHNSON, ANDY SHANGIN, HARVEY KALMAKOFF, CLEMENT SHANGIN, MARVIN YAGI, JOHN JONES, FRANK GRUNERT, CLEMENS GRUNERT, ANDY STEPANOFF, ALEC BRANDAL, ERNIE CARLSON, & AL ANDERSON,<br><br>Plaintiffs,<br><br>vs.<br><br>MCKIE CAMPBELL, Commissioner of the Fisheries, and Alaska Department of Fish & Game, in his official capacity,<br><br>Defendant. | Case No. 3:05-cv-128 TMB<br><br>O R D E R<br><br>(Motion to File Second Amended Complaint) |

On November 14, 2005, Plaintiffs moved to file a Second Amended Complaint in this matter. Docket 33. Defendant McKie Campbell opposes the Motion, and Plaintiffs have Replied. Docket nos. 35 & 39. This matter was taken under advisement by the Court on January 18, 2006, and on January 23, 2006, this case was transferred from Judge Singleton to the undersigned. Noting that new arguments were raised in Plaintiffs' Reply, the Court requested additional briefing from Defendant, which was filed on May 15, 2006. Docket 48.

**Factual and Procedural History**

Plaintiffs challenge an emergency fishing regulation regarding the operation of a cooperative in the Chignik purse seine salmon fishery. The history of this litigation is set out in Grunert v. State, 109 P.3d 924 (Alaska 2005) ("Grunert I") and in State of Alaska v. Grunert, ___ P.3d ___, Slip Opinion No. 6006, 2006 WL 1045490 (Alaska April 21, 2006)("Grunert II").

In March 2005, the Alaska Supreme Court concluded in Grunert I that a regulation allowing permit holders to essentially assign permits to other cooperative members violated Alaska's limited

1

entry law.  Immediately upon receiving the Alaska Supreme Court's decision, the cooperative members petitioned the Board of Fisheries to enact an emergency regulation that accommodated the Supreme Court's concerns while still authorizing the procedures allowed under the former regulations.  Finding that there were 83 out of 101 eligible permit holders registered to participate in the cooperative fishery, the Board concluded that "the timing of the court's rulings has created a situation of uncertainty at a critical period for final decision-making by many registered cooperative members, who had not been expecting to operate independently during the upcoming salmon season." Docket 1, Exhibit 1.  The Board enacted the emergency regulation, which allowed the cooperative fishery to occur the summer of 2005, deeming it "necessary to avoid widespread economic hardship for the 2005 Chignik salmon season." Id.  The fishery operated until September 2005.[1]

Plaintiffs immediately challenged the emergency regulation. They prevailed in the State Superior Court, which invalidated the emergency regulation, concluding that it did not satisfy the problems identified in Grunert I and that the regulation was therefore invalid.  The Board appealed to the Alaska Supreme Court and requested a stay of the Superior Court order.  The Alaska Supreme Court granted the stay, in effect allowing the fishery to proceed through its closing in September 2005 under the emergency regulation.

Plaintiffs then brought this Federal action on June 8, 2005, seeking a decision on an expedited basis regarding declaratory judgment and an injunction precluding the operation of the emergency regulation.[2]  Docket 1.  Judge Singleton declined to grant expedited consideration, concluding  that "a decision should await full development of the facts and the law." Docket 12.  A

---

[1] The board did not intend to make the regulation permanent, and it expired on September 2, 2005. State of Alaska v. Grunert, ___ P.3d ___, Slip Opinion No. 6006, 2006 WL 1045490 (Alaska April 21, 2006)("Grunert II").

[2] The original defendants were the State of Alaska, Alaska Board of Fisheries, and the Alaska Department of Fish and Game.  Docket 1.  Those parties were dismissed on sovereign immunity grounds, by order of the Honorable Judge James Singleton on July 6, 2005.  Docket 12.   Plaintiff was permitted to amend his Complaint to add McKie Campbell, Commissioner of the Fisheries and Alaska Department of Fish & Game, in his official capacity, as a defendant.  Id.

2

Scheduling and Planning Order was entered October 25, 2005, setting a discovery deadline of May 30, 2006, and a dispositive motions deadline of June 30, 2006. Docket 31.

The passage of time has resulted in a defacto result in favor of the emergency regulation remaining in effect for the duration of the 2005 fishing season. Accordingly, the relief sought by Plaintiffs in their First Amended Complaint, (a declaration that the emergency regulation is unconstitutional, invalid, void and unenforceable, and that the defendant be enjoined from enforcing the regulation), is of little consequence at this juncture.[3] See Docket 13.

**Motion for Leave to File Second Amended Complaint**

Plaintiffs' proposed Second Amended Complaint seeks to add a second cause of action for deprivation of constitutional and/or law rights pursuant to 42 U.S.C. §§ 1983 and 1985,[4] and to add ten new party defendants, each of whom at the time relevant to this matter was employed by or was an official of the State of Alaska. Docket 33. "Each and all acts committed by the defendants, were done by defendants, and each of them, not as individuals, but under the color and pretense of law of the State of Alaska and under the authority of their office as members of the Alaska Board of Fisheries." Docket 33 at 2. The proposed Second Amended Complaint seeks damages in excess of $100,000 for lost income, lost profits, emotional distress, mental anguish and anxiety, lost enjoyment of life, and lost use of their property, as well as punitive damages in a sum in excess of $100,000. Docket 33.

---

[3] The last version of the Chignik cooperative fishery regulation was repealed by the Board of Fisheries at its March 2006 meeting. The repeal was filed with the Lt. Governor on April 24, 2006, and became effective 30 days later. Docket 48 at 11, Exhibit A. Furthermore, on April 21, 2006, the Alaska Supreme Court ruled the Chignik cooperative fishery regulations invalid. Docket 48 at 11, citing Grunert II.

[4] Defendant argues that Plaintiffs' proposed Second Amended Complaint does not present a sustainable claim under 42 U.S.C. § 1985 because: 1) Plaintiffs are not a protected class; and 2) Plaintiffs fail to allege any specific facts to support the existence of the claimed conspiracy. Docket 35 at 4. Plaintiffs concede in their Reply that they "do not claim racial or otherwise class-based invidiously discriminatory animus behind the conspirator's action," and therefore agree that they "may not have a claim for damages under § 1985." Docket 39 at 12. Having apparently abandoned this claim, further analysis appears unnecessary.

Defendant McKie Campbell opposes the Motion to File Second Amended Complaint arguing that "the requested amendment would be futile and would serve no purpose other than harassment of the proposed defendants, a needless expansion of the scope of discovery, and needless additional motion practice." Docket 35.  Defendant argues that the claims against new party defendants in their official capacities as former and current members of the Alaska Board of Fisheries are barred by the Eleventh Amendment, and the proposed defendants would be entitled to absolute legislative immunity under 42 U.S.C. § 1983.  Docket 35 at 2.   Additionally, Defendant argues that the narrow exception to Eleventh Amendment immunity under Ex Parte Young would not apply to the proposed defendants because their functions are legislative, not administrative. Docket 35 at 5.  Finally, even if Ex Parte Young did apply to the new defendants, McKie argues that Young only allows prospective relief, and would not apply to Plaintiffs' claim for damages. Docket 35 at 6.

Plaintiff concedes that Federal law is well-settled that legislators are entitled to absolute immunity from suit under 42 U.S.C. § 1983.  Docket 39 at 3.  However, Plaintiff argues that the Board of Fishery members are not state, regional or local legislators entitled to absolute legislative immunity.  Id., at 3.  Rather, they argue that the Board of Fisheries is an administrative agency.  Id., at 6.  Furthermore, Plaintiffs argue that even if the members are considered legislators, individual legislative immunity does not apply where the decision is an application of policy to specific parties.  Id., at 3.  "Legislators are absolutely immune while passing laws, holding committee meetings, or when acting in a field where legislators traditionally have power to act."  Id., at 6. However, "when legislators are acting with respect to a specific situation that does not amount to policymaking, they may not have legislative immunity."  Id., at 7.

The Ninth Circuit has provided guidance for determining when a particular action is legislative versus administrative in Kaahumanu v. County of Maui, 315 F.3d 1215 (9th Cir. 2003). The Kaahumanu court instructed as follows:

> We determine whether an action is legislative by considering four factors: (1) "whether the act involves ad hoc decisionmaking, or the formulation of policy", (2) "whether the act applies to a few individuals, or the public at large"; (3) "whether the

4

act is formally legislative in character"; and (4) "whether it bears all the hallmarks of traditional legislation."

Id., at 1220, citing Bechard v. Rappold, 287 F.3d 827, 829 (9th Cir. 2002).

Considering, whether the act involves ad hoc decisionmaking, or the formulation of policy, and whether the act applies to a few individuals, or the public at large, the Kaahumanu court was faced with the issuance of a conditional use permit by the Maui County Council. There, the Court concluded that while a zoning ordinance establishes a rule of general application, the issuance of a conditional use permit affects only the parcel of land that is the subject of the application. Thus, the Ninth Circuit agreed with the district court that granting or denying the permit constituted ad hoc administration of the existing zoning ordinance, rather than the formulation of policy. 315 F.3d at 1220-21.

The circumstances in this case are less clear, as the Regulation in question, 5 AAC 15.359, affected only a relatively small group of individuals. "When the act in question applies to a few individuals rather than the public at large, legislative immunity is disfavored." 315 F.3d at 1222, citing San Pedero Hotel, 159 F.3d at 476. However, Defendant argues that the proposed defendants have absolute legislative immunity here because their liability would rest only on their votes to enact laws. Docket 48 at 2 (emphasis added). "A review of the regulations adopted by the Board will show that they are laws of general applicability, not administrative adjudications of individual rights. The regulations applied to all those who fished in the Chignik area." Docket 48 at 7, citing Former 5 AAC 15.359(b)(effective 2002-2005). He argues that "[t]he cooperative fishing regulations did not single out any particular individual and affect them differently from others. All of the versions of the regulation guaranteed allowed participation by any permit holder who elected to participate in the cooperative fishery." Docket 48 at 7-8.

This Court finds that although, as a practical matter, the Regulations impacted a relatively small group of individuals, they were in fact formal Regulations that are technically applicable to the public at large. Accordingly, the Board's actions involved the formulation of policy rather than ad hoc decisionmaking.

Considering whether the act is formally legislative in character, or bears all the hallmarks of traditional legislation, the Court finds that the Board is a policy-making body, functioning in the same way as the state legislature or any other legislative body. The Court agrees with the Defendant that "the act of voting for a regulation is, in form, quintessentially legislative." Docket 48 at 3-4, citing Bogan v. Scott-Harris, 523 U.S. 44, 54-55 (1998). Plaintiff concedes that legislators are entitled to absolute immunity from suit under 42 U.S.C. § 1983. Docket 39 at 3. Plaintiff's argument that the Board of Fisheries is in fact an administrative body, or that it was functioning in an administrative rather than legislative capacity when the regulations were enacted, is unpersuasive. The Alaska legislature created the Board of Fisheries and provided that the Board has regulation-making powers, but not administrative, budgeting or fiscal powers.[5] Although the Alaska Supreme Court has found that the regulation at issue in this case was improvidently drafted, there is no indication that the Board members were acting in any capacity other than as lawmakers. This Court agrees with Defendant that "[t]he regulatory actions challenged in this case are, in form and essence, no different from any other commercial fisheries regulation adopted by the board. There is nothing about the Chignik regulations that make them administrative rather than legislative in nature." Docket 48 at 8. The United States Supreme Court has held that "[a]bsolute legislative immunity attaches to all actions taken in 'the sphere of legitimate legislative activity,'" and "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Docket 48 at 3, citing Bogan v. Scott-Harris, 523 U.S. 44, 54-55 (1998). In this case, the enactment of the Regulation, though ultimately held invalid in Grunert II, was formally legislative in character.

Having concluded that all potential defendants in the proposed Second Amended Complaint would be entitled to legislative immunity, the filing of a Second Amended Complaint would be futile. Accordingly, the Court need not consider the remaining arguments in the briefing.

---

[5] "The boards have regulation-making powers as set out in this chapter, but do not have administrative, budgeting, or fiscal powers." AS § 16.05.241 (emphasis added).

**Conclusion**

In light of the foregoing, **it is hereby ordered** that Plaintiffs' Motion to File Second Amended Complaint, (Docket 35) is **DENIED.**

Dated at Anchorage, Alaska, this 19th day of June, 2006.

              s/ Timothy Burgess
              Timothy M. Burgess
              United States District Judge